In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-02-00113-CR


______________________________




TIMOTHY O. PASLAY, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 5th Judicial District Court


Bowie County, Texas


Trial Court No. 01F345-005




 




Before Ross, Cornelius* & Grant,** JJ.


Opinion by Justice Ross


*William J. Cornelius, C.J., Retired, Sitting by Assignment


**Ben Z. Grant, J., Retired, Sitting by Assignment



O P I N I O N



 Timothy O. Paslay appeals his conviction for the manslaughter of his wife, Jennifer
Paslay. See Tex. Pen. Code Ann. § 19.04 (Vernon 2003). Timothy pled not guilty. The
jury found him guilty of manslaughter and assessed his punishment at five years'
imprisonment. Timothy was tried simultaneously for failure to stop and render aid. See 
Tex. Transp. Code Ann. § 550.021 (Vernon 1999). The jury also found him guilty of that
charge and set his punishment at five years' imprisonment. The sentences will run
concurrently. (1) 

 In his sole issue on appeal in the manslaughter case, Timothy challenges the legal
sufficiency of the evidence to support his conviction. For the reasons stated below, we
affirm the trial court's judgment.

 In reviewing the legal sufficiency of the evidence, we view the evidence in the light
most favorable to the verdict and determine whether any rational trier of fact could have
found the essential elements of the offense beyond a reasonable doubt. Kutzner v. State,
994 S.W.2d 180, 184 (Tex. Crim. App. 1999). Whether the evidence satisfies the legal
sufficiency test is a question of law. Collins v. State, 969 S.W.2d 114, 116 (Tex.
App.-Texarkana 1998, pet. ref'd). A determination that the evidence is legally insufficient
means (1) the case should never have been submitted to the jury, and (2) the cause must
be reversed and an acquittal ordered. Id. In a jury trial, the jury is the final arbiter of
witness credibility and is free to reconcile any conflicts in the evidence. Fuentes v. State,
991 S.W.2d 267, 271 (Tex. Crim. App. 1999). The jury is also free to believe or disbelieve
any testimony. Swearingen v. State, 101 S.W.3d 89, 98 (Tex. Crim. App. 2003). We
presume that any conflicts in the evidence were resolved by the jury in favor of the verdict. 
Fuentes, 991 S.W.2d at 271. 

 The evidence, viewed in the light most favorable to the verdict, shows that Jennifer
and Timothy were married in 1997. On the night of June 2, 2001, they got into an
argument at their residence. There was evidence Timothy had several beers earlier in the
day. He was angry and decided to leave. Timothy testified Jennifer tried to stop him from
leaving the house, but he pushed her aside and went to his car. Jennifer followed him
outside. Colin, the couple's three-year-old son, followed his parents outside. Shortly
thereafter, Colin either climbed or was placed on top of the car trunk. As Timothy began
to drive away, Jennifer realized Colin was still sitting on the trunk. 

 Jennifer then ran alongside the car and banged on the passenger side window to
get Timothy to stop. Her efforts were unsuccessful. Jennifer then jumped on the hood of
the car in an apparent attempt to stop Timothy from driving away. At almost the same
time, Colin either fell or jumped off the trunk. Colin was not injured. Jennifer, however,
continued to hang on to the hood of the car. Timothy accelerated and veered over to the
left-hand lane-the opposing lane-and then veered back to the right-hand lane. Jennifer
fell off the car and was fatally injured. Timothy knew Jennifer had fallen from the hood, but
did not apply the brakes or stop the car to check on either Colin or Jennifer. He left the
immediate scene, but returned shortly, driving around Jennifer's body and people assisting
her, passing in the left lane of the street, and continued on without stopping. A friend
eventually reached Timothy on his cellular telephone while he was at Chili's restaurant in
Texarkana. The friend informed him Jennifer was in the hospital and "it didn't look good,"
but Timothy did not leave the restaurant to go to the hospital; rather, he went home to take
a shower. Jennifer later died at the hospital. The State charged Timothy with recklessly
causing the death of his wife.

 On appeal, Timothy contends the evidence is legally insufficient to support the jury's
finding that he acted recklessly and was therefore guilty of manslaughter. Timothy's
expert, Dr. Wayman Johnson, testified Timothy did not have sufficient time to form the
requisite criminal intent. Thus, according to Timothy, the evidence is legally insufficient to
support his manslaughter conviction.

 A person commits a criminal offense only if he or she "voluntarily engages in
conduct, including an act, an omission, or possession." Tex. Pen. Code Ann. § 6.01
(Vernon 2003). A person commits manslaughter by recklessly causing the death of an
individual. Tex. Pen. Code Ann. § 19.04(a). "A person acts recklessly, or is reckless" when
he or she 

is aware of but consciously disregards a substantial and unjustifiable risk that
the circumstances exist or the result will occur. The risk must be of such a
nature and degree that its disregard constitutes a gross deviation from the
standard of care that an ordinary person would exercise under all the
circumstances as viewed from the actor's standpoint.


Tex. Pen. Code Ann. § 6.03(c) (Vernon 2003). "Circumstantial evidence is generally
needed to prove a culpable mental state, and because the culpable mental state generally
must be inferred from the circumstances surrounding the offense, the trier of fact may infer
the defendant's culpable mental state from relevant evidence tending to prove its
existence." Davis v. State, 955 S.W.2d 340, 349 (Tex. App.-Fort Worth 1997, pet. ref'd)
(citing Hernandez v. State, 819 S.W.2d 806, 810 (Tex. Crim. App. 1991); Dillon v. State,
574 S.W.2d 92, 94 (Tex. Crim. App. [Panel Op.] 1978); Skillern v. State, 890 S.W.2d 849,
880 (Tex. App.-Austin 1994, pet. ref'd)).

 In this case, the indictment alleged Timothy "on or about June 2, 2001, did
unlawfully then and there, recklessly cause the death of an individual, Jennifer Paslay, by
accelerating a vehicle while Jennifer Paslay was hanging onto the hood; . . . ." The State
therefore had the duty to prove Timothy was "aware of but consciously disregard[ed] a
substantial and unjustifiable risk" that serious bodily injury to Jennifer would occur from his
acceleration of the car. See Tex. Pen. Code Ann. § 6.03(c). On appeal, Timothy contends
Johnson's expert testimony established that Jennifer's death was the result of an accident
and not Timothy's alleged reckless conduct. 

 Johnson testified as an expert regarding human reactions in automobile accidents. 
Johnson's research purported to determine the average reaction time of drivers involved
in accidents. Johnson testified that Jennifer's body was found 75 feet from the Paslay
home and that it would take 3.5 seconds to travel 75 feet at normal acceleration from a
dead stop. Johnson further opined it would take 1.3 seconds for the car to travel its first
car length; thereafter, it would take 2.2 seconds to travel from the point where Jennifer
jumped on the hood (assuming she jumped on the hood after the car had traveled one car
length) to where her body landed. Johnson also calculated it would take a minimum of 1.5
seconds for Timothy to have actually observed, focused, and responded to Jennifer's
jumping on the hood by braking-leaving less than one second before Timothy's vehicle
reached the 75-foot marker. Johnson believed, however, it may have taken Timothy as
many as 4.5 seconds to react to Jennifer's jumping on the hood. Thus, because Timothy
had insufficient time before Jennifer sustained her fatal injuries to both be aware of the
danger his driving posed to Jennifer and also consciously disregard that danger, he lacked
the requisite criminal intent to commit the crime of manslaughter. The State did not
present expert testimony to contradict Johnson's theories. 

 Timothy cites Alford v. State, 866 S.W.2d 619, 624 n.8 (Tex. Crim. App. 1993), to
support his position that, because there was expert testimony Jennifer's death was the
result of an accident and because the State presented no evidence to directly undermine
the expert's testimony, the State's evidence is insufficient to overcome the evidence of
accident and insufficient to support a manslaughter conviction. In Alford, the defendant
claimed the trial court's jury charge improperly shifted the burden of proof to him to show,
by a preponderance of the evidence, he was under duress when he committed a robbery. 
Id. at 621. Alford argued that the charge delegated a burden of proof to both parties on
the same issue by requiring the state to prove voluntariness beyond a reasonable doubt,
yet requiring Alford, in proving his affirmative defense of duress, to establish that his
actions were involuntary by a preponderance of the evidence. Id. The Texas Court of
Criminal Appeals' decision in Alford first noted that the state need not prove voluntariness
unless the evidence raises the issue of accident, but then went on to analyze what
constituted voluntary conduct. Id. at 624 n.8. The Alford court held that the term
"voluntarily," for the purpose of establishing criminal culpability, means "the absence of an
accidental act, omission or possession." Id. at 624. More importantly to the disposition of
the case now before us, however, is the Alford decision's limitation of the term
"voluntariness" to the actor's own physical bodily movements. Id. In other words, when
an accidental act is at issue, a defendant must claim his or her own physical bodily
movements "were accidental" to raise a defense of accident. Id.

 Alford is not applicable to this case. First, the issue in Alford was whether the trial
court erred in giving a jury instruction shifting the burden of proof on the affirmative defense
of duress. The issue raised in the case now before us is sufficiency of the evidence. 
Second, Timothy does not claim that his own physical movements were accidental so as
to justify evidence of accident under the language of Alford. Instead, he contends the
expert's testimony establishes he had insufficient time to form the culpable mens rea
necessary for the crime. 

 Timothy's argument assumes the jury must believe the testimony presented by his
expert witness. Juries, however, are free to believe or disbelieve all or any part of a
witness' testimony. Swearingen, 101 S.W.3d at 98. The jury in this case could have
reasonably disbelieved all or part of Johnson's testimony. Johnson testified Timothy may
have had some time, albeit a very short time, to react. He also opined Timothy may not
have had time to react. The jury's verdict suggests it resolved the apparent conflict in
Johnson's opinions in favor of the State.

 Moreover, some of Johnson's opinions of the amount of time it would take a person
in Timothy's position to react were based on the average reaction time to apply the brakes. 
But Timothy was charged with recklessly accelerating when Jennifer jumped on the hood. 
It is reasonable to assume the time required to react by accelerating could be less than that
required to hit the brakes, especially if the driver's foot was already on the accelerator, as
Timothy's apparently was, since his car was already moving forward.

 The jury could also have looked to the circumstances surrounding the incident to
determine Timothy did, in fact, have time to react after Jennifer jumped on the hood of the
car. Linda Easterling testified, "As Jennifer jumped on the car, the car accelerated and
veered over to the left hand lane-the opposing lane. . . . [Jennifer] jumped on about here
[indicating on a map], and when she jumped on [the car], he punched the gas and went
over sideways." "When [Timothy] veered over, you know, he had to veer back or go over
through the neighbor's yard. He had to come back to the right to be going the right
direction." Throughout the remainder of her testimony, Easterling continued to repeat her
observation that Timothy "punched the gas" after Jennifer jumped on the hood. We
believe from this testimony a reasonable jury could conclude that Timothy was aware of
the danger his driving posed for Jennifer, but that he nonetheless consciously disregarded
that danger in his attempt to throw Jennifer off the hood of the car by veering left to right
while suddenly accelerating.

 Additionally, the jury saw a videotaped statement by Timothy in which he admitted
he knew Jennifer had been hurt to some degree, that he returned to the scene without
stopping, and that he then "went out to eat." Easterling, Cindy McDonald, and Ronald
Friesen, both also neighbors, testified concerning Timothy's failure to stop when he
returned to the scene where his wife lay injured. Such conduct suggests an awareness of
criminal conduct, as well as conscious indifference to its consequences. See, e.g., Valdez
v. State, 623 S.W.2d 317, 321 (Tex. Crim. App. [Panel Op.] 1979) (op. on reh'g) (flight from
scene of crime is circumstance from which inference of guilt may be drawn) (cited favorably
by Roberson v. State, 80 S.W.3d 730, 737 (Tex. App.-Houston [1st Dist.] 2002, pet. ref'd)). 
The jury could also infer criminal intent from the evidence that Timothy did not go to the
hospital after receiving the telephone call informing him Jennifer was in the hospital and
"it didn't look good."

 We conclude there is evidence from which a jury could have found, beyond a
reasonable doubt, Timothy had sufficient time to both realize the danger his driving,
including sudden acceleration, posed to Jennifer and to consciously disregard that danger. 
Accordingly, the evidence is legally sufficient to support the conviction for manslaughter.

 We affirm the judgment.


 Donald R. Ross

 Justice



Date Submitted: July 10, 2003

Date Decided: August 7, 2003 


Do Not Publish

1. The trial court granted the State's motion to consolidate the manslaughter case with
the failure to stop and render aid case for purposes of the jury trial. Both cases, however,
were appealed separately. The parties have chosen to brief both cases together; we,
however, will address each case by way of separate opinion. See Paslay v. State, No. 06-02-00112-CR (Tex. App.-Texarkana, Aug. 7, 2003, no pet. h.) (not designated for
publication).