No. 2594.

LEE DICKENSON *v.* THE STATE.

ASSAULT—EVIDENCE.—See the opinion and the statement of the case for evidence *held* insufficient to support a conviction for simple assault.

APPEAL from the District Court of Camp. Tried below before the Hon. W. P. McLean.

The indictment in this case charged the appellant with an aggravated assault and battery upon the persons of Annie Watts, Nora Gibson and Ollie Holt, females. The conviction was for simple assault, and the penalty assessed was a fine of five dollars.

Mrs. Watts was the first witness for the State. She testified, in substance, that she and her sister, Mrs. Gibson, and their little neice, Ollie Holt, went to church in a buggy, in Leesburg, Camp county, Texas, on the night of July 11, 1886. They started home in their buggy as soon as services were over, and had proceeded about three hundred yards on their journey, when the defendant and another man, both being horseback, came running up from towards the church. The defendant's horse struck the left hind wheel of witness's buggy, upset the vehicle, and seriously injured witness in the face, and more or less injured Mrs. Gibson and Ollie Holt. Witness was confined to her bed all of the next day, and was sore for several days.

Cross examined, the witness stated that the defendant helped her get free from the upturned buggy. He then said that his

horse became unmanageable, could not be controlled by him and ran away with him. The road was very dry and dusty, and was being traveled by a large number of persons. Witness did not observe whether or not the bridle bit was out of the defendant's horse's mouth. The witness had no previous acquaintance with the defendant.

Mrs. Gibson testified, for the State, that her collar bone was broken by the fall from the buggy when it was overturned by the defendant's horse. The defendant's horse stopped across the road in front of the buggy after upsetting it, and the defendant dismounted and helped the witness, her sister and neice to get from under the vehicle. She had never previously known the defendaut.

B. G. Watts, the husband of the first witness, testified, for the State, that he was on horseback, riding behind his wife's buggy, at the time of the collision. He heard the fast running of horses behind him, and hallooed back to warn the riders, but could not say that his voice was heard. One of the horses ran against the witness's horse, and the other, defendant's horse, ran against his wife's buggy and upset it, throwing his wife, Mrs. Gibson and Ollie Holt to the ground. Witness dismounted and went immediately to the buggy, where he found the defendant assisting the ladies. He appeared to be greatly grieved, and explained that his horse became unmanageable and ran away with him. The little girl, Ollie Holt, was seriously hurt for the time being, and Mrs. Watts and Mrs. Gibson were slightly hurt.

Cross examined, the witness said that he had known the defendant about two years. He had never known of any misconduct on the part of the defendant previous to this affair. Witness afterwards met defendant going to his, witness's, house. Defendant then expressed his sorrow over the occurrence, and said that he was going to see what the damage to the buggy amounted to and pay it. He also offered to pay the doctor's bill. The witness was then on his way to see the justice of the peace, who had sent for him. The witness did not want to file a complaint against the defendant, but the justice of the peace insisted that he should do so. The horses of the defendant and his companion, Townsend, appeared to be running at full speed when the collision occurred. Defendant had never paid either the damages or the doctor's bill. When defendant proposed to pay the charges stated, the witness merely told him that it was all right, and did not give him an estimate of the amounts.

The defendant was subsequently tried before a jury for horse racing on the public road, and was acquitted. His present attorney was then the county attorney, and vigorously prose- cuted the horse racing case against him.

W. B. Carson testified, for the State, that, on his way home from church, on the night of the collision, and just before it occurred, the horses bearing the defendant and Townsend passed him in a fast run, but witness did not know that they were running away. They seemed to travel at the will of the riders, and the witness did not hear the word "whoa" spoken by either of the said riders. One of the horses stepped on a plank placed for footmen, across a small ditch. Witness thought then that the plank broke, but did not look at it on that night. The plank was at its usual place on the next morning, with a small piece broken from its side. Quite a number of people were traveling the road that night, some in advance and some in the rear of the witness. It appeared to the witness that the horses ran faster after they passed the plank than they did before they reached it.

William Friday was the next witness for the State. He testi- fied that he, in company with a young lady, both riding horse back, attended church on the night of the collision. They had proceeded but a short way on their road home, but were in advance of witness Carson, when they heard the running of horses behind them. Soon the horses of defendant and Town- send passed witness on a dead run. As they passed witness he heard defendant call to Townsend to hold his, Townsend's, horse in, because while it was running, he, defendant, could not con- trol his horse. The horses appeared to increase their speed after one or the other of them stepped on the plank referred to by the witness Carson. Witness knew the defendant only by sight, and knew nothing about the character of the horse ridden by the defendant on the night of the collision.

T. L. Skeen testified, for the State, that, when defendant and Townsend passed him at a point about seventy-five yards from the church, their horses were traveling in a lope. When they had gone about one hundred yards, the witness heard the horses strike a fast gait, and soon afterwards heard the ladies scream- ing.

Cross-examined, the witness said that he had known the defendant about two years, and had never known him to be guilty of misconduct prior to the collision. Witness was the

justice of the peace who presided at the trial of defendant for horse racing at the time of the collision. The defendant was vigorously prosecuted on that trial, but was acquitted by a jury. The State closed.

J. A. Crampler testified, for the defense, that he had known the defendant over two years, and had never known him to be guilty of misconduct. He knew the horse ridden by the defendant on the night of the overturning of Mrs. Watts's buggy. That horse was an ungovernable animal in company with other horses, especially if another horse attempts to outtravel him.

Robert Martin testified, for the defense, that defendant and Townsend passed him in a lope just before the collision with the buggy. In crossing a ditch the feet of one of the horses struck a plank. The plank was thrown up with a great noise, when the horses increased their speed to a run. Witness soon heard the screaming of the ladies, and went to where the buggy was overturned. Defendant's horse was standing across the buggy, and the defendant was trying to get him off. With the assistance of witness, the horse was taken from across the buggy, when defendant turned to the assistance of the ladies and witness led the horse off and hitched him. The witness knew the defendant's horse to be an unmanageble animal when excited, and especially if in company with other horses. Witness did not observe the bits of the bridle of defendant's horse, and could not say whether they were in the animal's mouth when he hitched him, or not.

Clarence Martin testified, for the defense, that he reached the upturned buggy about the time the defendant got the ladies from under it. The little girl was considerably hurt. The ladies and the defendant appeared to be greatly excited. Witness then went to defendant's horse, and found that the bridle bits were out of his mouth. Witness did not know how the bits got out of the horse's mouth.

Joe Smith testified, for the defense, substantially as Friday did for the State, adding that when Townsend's horse stepped on the plank and threw it up the end of it struck defendant's horse, and both horses increased their speed to a dead run. When the defendant and Townsend passed witness their horses were loping, and they seemed to be under control of the riders until the plank was struck. Witness had but a slight acquaintance with the defendant.

Sam Julian, testifying for the defense, said that he knew the

horse ridden by the defendant on the night of the alleged offense to be an ungovernable animal when excited. He had known that horse to throw the defendant once or twice.

D. H. Townsend testified, for the defense, that he did not know defendant's horse, but knew that the horse ridden by John Townsend, the defendant's companion on the night of the collision, was an unruly, vicious animal, and in the habit running away. That horse, at the time of the collision, had been resting for some time in a pasture. Witness was John Townsend's father, and, had he known that John intended to ride that horse on that night, he would have prevented him.

*A. S. Zachry,* for the appellant.

*W. L. Davidson,* Assistant Attorney General, for the State.

WILLSON, JUDGE. A jury was waived by the defendant and the cause submitted upon the facts to the judge, who found the defendant guilty of a simple assault. In our opinion the evidence does not support the finding of the judge. On the contrary, the evidence shows that defendant's horse became unmanageable, not subject to his control, ran away with him, ran against and upset the buggy in which were the ladies and the child, and thus caused the injuries for the infliction of which he has been convicted. To our minds the facts clearly show that the upsetting of the buggy was an act done by accident, and without such a degree of carelessness or negligence on the part of the defendant as rendered it criminal. (Penal Code, art. 44.) There was no intent on his part to injure, and without such an intent there could not be an assault in law. (Penal Code, art. 484.) The evidence repels the presumption of such an intent. (Donaldson v. The State, 10 Texas Ct. App., 307.)

The judgment is reversed and the cause is remanded.

*Reversed and remanded.*