**Christopher J. ALFORD, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 484–91.**

Court of Criminal Appeals of Texas, En Banc.

Nov. 24, 1993.

Richard J. Corbitt, Lawrence B. Mitchell, Dallas, for appellant.

John Vance, Dist. Atty. and Sharon Batjer, Asst. Dist. Atty., Dallas, Robert Huttash, State's Atty., Austin, for State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

MALONEY, Judge.

Appellant was convicted by a jury of the offense of aggravated robbery and sentenced to fifty years' confinement. Appellant's conviction was affirmed by the Fifth District Court of Appeals. *Alford v. State*, 806 S.W.2d 581 (Tex.App.—Dallas 1991). We granted appellant's petition for discretionary review, pursuant to Tex.R.App.P. 200(c)(2), to address whether the Court of Appeals erred in holding that the trial court, by placing on appellant the burden of proving the affirmative defense of duress, did not violate due

process of law as guaranteed by the Fourteenth Amendment to the United States Constitution.[1]

■ Appellant testified at trial that his participation in the instant offense was compelled by threats from his cohort of imminent death or serious bodily injury. The trial court's charge instructed the jury that an offense is committed only if the offender acts voluntarily. The charge further instructed the jury that appellant bore the burden of proving the affirmative defense of duress by a preponderance of the evidence.[2] Appellant objected to the charge as violating due process under the Fourteenth Amendment, claiming the charge delegated a burden of proof to both parties on the same issue by requiring the State to prove voluntariness beyond a reasonable doubt, yet requiring appellant, in proving duress, to establish that his actions were involuntary by a preponderance of the evidence.[3] Appellant's objections were overruled.

■ Relying in part on the Supreme Court's "willingness to give state legislatures considerable leeway in defining defenses to crimes", *id.* at 588 (citing *Patterson v. New York*, 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d

281 (1977)), the Court of Appeals held that the shifting of the burden of proof[4] to appellant to prove duress did not violate due process. *Alford,* 806 S.W.2d at 589. While the Court of Appeals' efforts in analyzing the burden of proof issue are commendable, it overlooked the threshold issue regarding the meaning of the term "voluntarily". Based upon our interpretation of that term as follows, we will affirm.

Whether or not proof of duress negates the issue of voluntariness turns upon the meaning of the term "voluntarily" as it is utilized in section 6.01(a) of the Penal Code. Section 6.01(a) of the Penal Code provides that:

> A person commits an offense only if he voluntarily engages in conduct, including an act, an omission, or possession.

TEX.PENAL CODE ANN. § 6.01(a). If voluntariness embraces only a physical element, in the sense of one's bodily movements, then the issue of duress would have no bearing on the issue of voluntariness unless the coerced actor claims his bodily movements in committing the crime were not controlled through his own efforts, which appellant does not

---

1. Although we also granted ground two of appellant's petition for discretionary review pertaining to the failure of the trial court to include a definition of "beyond a reasonable doubt" in the court's charge, counsel for appellant acknowledged during oral argument that *Geesa v. State,* 820 S.W.2d 154 (Tex.Crim.App.1991), is dispositive of that issue and therefore we do not address ground two.

2. Appellant acknowledges that the charge correctly reflected the burdens of proof as set forth in the Texas Penal Code. The Code provides that duress is an affirmative defense, TEX.PENAL CODE ANN. § 8.05(a), and that "[i]f the issue of the existence of an affirmative defense is submitted to the jury, the court shall charge that the defendant must prove the affirmative defense by a preponderance of evidence", TEX.PENAL CODE ANN. § 2.04(d).

3. At trial appellant objected to the charge "on the basis of due process as guaranteed by both the fourteenth amendment and the Texas Constitution", claiming that in requiring the State to prove voluntary conduct, while at the same time requiring appellant to prove "that his actions were involuntary through duress ... the Court has given both parties a burden of proof on the same issue, rendering the charge inherently in

conflict and confusing and misleading to the jury".

Appellant also appears to argue in his brief that duress negates mental state or intent. However, because appellant's objections at trial were limited to the issue of voluntariness, appellant has not preserved the issue of whether duress negates the element of intent.

4. As the Court of Appeals correctly observed, the burden of proof consists of the combination of two components—the burden of production and the burden of persuasion. These components have been described as follows:

> The former is the burden of producing some evidence on a particular fact in issue to avoid an adverse ruling by the trial judge (ie. directed verdict or denial of instruction). The latter is "the burden of persuading the trier of fact that the alleged fact is true."

Powell, Gerald Reading, *Constitutionality of Affirmative Defenses in the Texas Penal Code,* 28 BAYLOR L.REV. 120, 121 (1976). An "affirmative defense" requires the defendant to bear both the burden of production and the burden of persuasion, in contrast to a "defense", which requires the defendant to bear the burden of production only. *Alford,* 806 S.W.2d at 584; TEX.PENAL CODE ANN. §§ 2.03, 2.04.

contend. However, if voluntariness includes a mental element, in the nature of free will, then the issue of duress may bear upon the issue of voluntariness. Appellant's arguments assume that voluntariness incorporates such a mental element. However, the traditional view of criminal responsibility as comprised of an act and a mental state, the embodiment of that concept within the scheme of Chapter 6, and our view of the role of section 6.01(a) to date, support the conclusion that the term "voluntarily", as used in section 6.01(a), does not include the concept of free will.

It is settled law that criminal liability must be supported by proof of both a criminal act and a culpable mental state. TEX.PENAL CODE ANN. § 6.01 *Practice Commentary* (1974); MODEL PENAL CODE § 2.01 *Comment.* This rudimentary concept is reflected in Chapter 6 of the Texas Penal Code,[5] with section 6.01 providing for voluntary act, and 6.02 requiring culpable mental state. *See Alvarado v. State,* 704 S.W.2d 36, 38 (Tex. Crim.App.1985) (opinion on reh'g) (recognizing that the significance of section 6.01(a) in context of Chapter 6 is that it "distinguishes culpable mental states from the requirement of voluntary conduct"); *see also* TEX.PENAL CODE ANN. § 6.01 *Practice Commentary* (1974) ("[s]ubsection (a) codifies the first part of elementary rule requiring a voluntary act or omission as a predicate to criminal responsibility"); TEXAS ANNOTATED PENAL STATUTES § 6.01, *Explanatory Comment* 232 (Branch's 3rd ed. 1974) ("a voluntary act [under section 6.01(a) ]—be it speech, possession, or bodily movement plus the mens rea requirement in violation of a statutory prohibition—is necessary before a person's conduct is criminal"). We have viewed section 6.01(a) as imposing an actus element of criminal liability onto every offense:

> [a]n additional significance of § 6.01 in the instant case is that it superimposes an "engage in conduct" requirement onto *every* offense; this, however, is relevant to the voluntariness of acts or omissions, and not the subject of culpable mental state.

*Alvarado,* 704 S.W.2d at 38. Although it is clear that section 6.01(a) embodies the elemental principle that criminal responsibility arises in part from an act, it is less clear how the term "voluntarily" effects that principle.

On occasions when we have addressed the term "voluntarily" as utilized in section 6.01(a), we have viewed it as meaning the converse of accidentally. *See, e.g., George v. State,* 681 S.W.2d 43 (Tex.Crim.App.1984); *Williams v. State,* 630 S.W.2d 640 (Tex.Crim. App.1982) (opinion on reh'g); *Dockery v. State,* 542 S.W.2d 644, 649 (Tex.Crim.App. 1975) (opinion on reh'g). For instance, in *Dockery* we said:

> It is clear [ ] that *a homicide may still be accidental under our new Penal Code.... By enacting this section [6.01(a) ] the Legislature intended to assure that persons not be criminally punished for acts, omissions, and possessions not done voluntarily. Therefore, if a homicide is not the result of voluntary conduct, it may not be criminally punished.*
>
> However, it is also clear that such a homicide must be accompanied by one of the four culpable mental states. [citations omitted]
>
> We conclude, therefore, that homicide is punishable only where the State proves both voluntary conduct and a culpable mental state.

*Dockery,* 542 S.W.2d at 649–50 (emphasis added). Likewise, in *Williams,* where the defendant objected to the charge for its failure to instruct on the defense of accident, we said:

> There is no law and defense of accident in the present penal code, and the bench and bar would be well advised to avoid the term "accident" in connection with offenses defined by the present penal code. *The function of the former defense of accident is performed now by the requirement of V.T.C.A., Penal Code, Section 6.01(a),* that "A person commits an offense if he voluntarily engages in conduct...." [citation

---

**5.** Chapter 6, *Culpability Generally,* is comprised of the following sections:

6.01 Requirement of Voluntary Act or Omission.

6.02 Requirement of Culpability.
6.03 Definitions of Culpable Mental States.
6.04 Causation: Conduct and Results.
TEX.PENAL CODE ANN. Chapter 6.

omitted] If the issue is raised by the evidence, a jury may be charged that a defendant should be acquitted if there is a reasonable doubt as to whether he voluntarily engaged in the conduct of which he is accused.

*Williams,* 630 S.W.2d at 644 (emphasis added). Therefore, to date, section 6.01(a) has been viewed by this Court as providing for the *act* element of criminal liability and as incorporating the notion that one will not be subjected to criminal liability for an *accidental* act. We are not persuaded that the Legislature intended section 6.01(a) to embody any broader meaning.[6]

The Code does not define the term "voluntarily". We recently addressed the interpretation of specific words used in statutes:

6. The Legislature considered and rejected an earlier version of section 6.01 that might have made their intentions more clear. In 1970, a bill was considered by the Legislature that had been prepared by the State Bar Committee on the Revision of the Penal Code. Section 6.01 of that committee draft provided as follows:

> (a) A person does not commit an offense unless his criminal responsibility is based on conduct that includes either a voluntary act or a conscious omission to perform a voluntary act when he is physically capable of performing it.
> (b) A voluntary act is a bodily movement performed consciously as a result of effort or determination.

TEXAS PENAL CODE § 6.01 (A Proposed Revision, Final Draft 1970). The Committee Comment to this section noted that subsection (b)'s definition of a voluntary act excluded "involuntary and unconscious conduct such as convulsion, reflex, and coma". While the inclusion of this subsection (b) might have made clear that the term "voluntary" refers only to the physical control one has over bodily movements, we do not think that the absence of this section from the final version passed by the Legislature amounts to evidence that the Legislature intended the term to include a concept of free will. In the final version passed by the Legislature, sections 6.01, 6.02 and 6.03 of the Proposed Draft were all incorporated into section 6.01. It is just as likely that, in an effort to streamline these provisions, the Legislature concluded that the definition of "voluntary" was sufficiently clear from its context.

The comparable A.L.I. Model Penal Code provision as well as its commentaries are more explicit on this issue than the Texas Code. The comparable Model Penal Code section provides, in relevant part, as follows:

> (1) A person is not guilty of an offense unless his liability is based on conduct which includes

... in determining the meaning of a word in a statute, "the inquiry is not as to its abstract meaning, but as to the sense in which it is used when the legislative purpose so requires." [citation omitted] Typically, a word is construed according to its plain meaning, but a word may be given a broader or a narrower meaning than that which it has in ordinary usage. [citation omitted] The principle rule is that a statute, when susceptible to more than one construction, will be interpreted so as to secure the purpose or benefit intended. *Ward v. State,* 829 S.W.2d 787, 791 (Tex. Crim.App.1992). Webster's definition of the term "voluntary" includes at least eight variations, some of which are considerably broader than others and many of which equate intentional conduct with voluntary conduct.[7]

> a voluntary act or the omission to perform an act of which he is physically capable.
> (2) The following are not voluntary acts within the meaning of this Section:
> (a) a reflex or convulsion;
> (b) a bodily movement during unconsciousness or sleep;
> (c) conduct during hypnosis or resulting from hypnotic suggestion;
> (d) a bodily movement that otherwise is not a product of the effort or determination of the actor, either conscious or habitual;

MODEL PENAL CODE § 2.01. The Comment to this section explicitly rejects the notion that a concept of free will is included here:

> The term "voluntary" as used in this section does not inject into the criminal law questions about determinism and free will.[ ] Rather, it focuses upon conduct that is within the control of the actor. There is sufficient difference between ordinary human activity and a reflex or a convulsion to make it desirable that they be distinguished for purposes of criminal responsibility by a term like "voluntary."

*Id., Comment* at 215.

7. "Voluntary" is defined by Webster's Dictionary as follows:

> 1. brought about by one's own free choice; given or done of one's own free will; freely chosen or undertaken 2. acting in a specified capacity willingly or of one's own accord 3. intentional; not accidental <*voluntary* manslaughter> 4. controlled by one's mind or will <*voluntary* muscles> 5. having free will or the power of free choice <man is a *voluntary* agent> 6. a) supported by contributions or free will offerings; not supported or maintained by the state <*voluntary* churches> b) done or carried on by or made up of volunteers rather by people paid or conscripted 7. arising in the

Although most of these variations incorporate a concept of free will, we think a narrower construction is more consistent with the likely intention of the Legislature in light of the function of section 6.01(a), as discussed above. In the absence of evidence that the Legislature intended the term "voluntarily" to be given such a broad definition, we will not construe it in that manner. Rather, we hold that the term "voluntarily" as utilized in section 6.01(a) means the absence of an accidental act, omission or possession.

 Appellant claims that the charge improperly delegated a burden of proof to both parties on the same issue by requiring the State to prove voluntariness beyond a

reasonable doubt, while requiring appellant, in proving duress, to establish that his actions were involuntary by a preponderance of the evidence. In light of the meaning of voluntariness as we have herein defined it, appellant's argument is without merit. Voluntariness, within the meaning of section 6.01(a), refers only to one's physical bodily movements. Appellant does not claim that his bodily movements were accidental or manipulated by his coercer. Therefore, in attempting to prove duress, appellant was not required to disprove voluntariness.[8] Rather, appellant was required to prove that he committed the offense because of the coercive elements set forth in section 8.05.[9]

mind without external constraint; spontaneous
8. *Law* a) acting or done *without compulsion or persuasion* b) done without profit, payment, or any valuable consideration[.]
WEBSTER'S NEW WORLD DICTIONARY 1592–93 (2nd ed. 1986) (emphasis in original).

8. Because "voluntarily" means the *absence* of accidental act, omission or possession, it is not a fact that the State must prove in every case. Rather, the State need not prove voluntariness unless the evidence raises the issue of accident, in which case the State must disprove the theory of accident beyond a reasonable doubt. We recognize the existence of authority which appears to be conflicting on the issue of whether voluntariness is an element or fact that must be proven by the State. *Compare Dockery v. State,* 542 S.W.2d 644, 650 (Tex.Crim.App.1976) (in context of claim of accident, State must prove both voluntary conduct under 6.01(a) and culpable mental state); *Williams v. State,* 630 S.W.2d 640, 644 (Tex.Crim.App.1982) (opinion on reh'g) (if evidence raises the issue of accident, defendant should be acquitted if there is a reasonable doubt as to whether he voluntarily engaged in the conduct); and *Alvarado v. State,* 704 S.W.2d 36, 38 (Tex.Crim.App.1985) (article 6.01(a) imposes an "engage in conduct" requirement onto every offense) *with Crank v. State,* 761 S.W.2d 328, 352 (Tex.Crim.App.1988) (voluntariness of defendant's actions is a defense which must be raised by the accused); *Bermudez v. State,* 533 S.W.2d 806, 807 (Tex.Crim.App.1976) (voluntariness is in the nature of a defense and need not be pled in the indictment); *Davis v. McCotter,* 766 F.2d 203 (5th Cir.1985) (relying on *Bermudez* to hold that because voluntariness is not an element of aggravated robbery it need not be proven by State; therefore, not a violation of due process to require defendant to prove affirmative defense of duress). These cases are now reconciled in light of the narrow meaning of voluntariness, as defined in this opinion, and our holding that the State need not prove voluntariness unless the issue of accident is raised by the evidence. We

disavow *Crank,* 761 S.W.2d at 352, to the extent it implied that the issue of voluntariness could only be raised by the defendant as an affirmative defense under section 8.05, governing duress. That case did not address the meaning of voluntariness specifically within article 6.01(a).

9. Even if we had held that voluntariness as utilized in section 6.01(a) incorporates a mental element in the nature of free will, we would not agree with appellant's conclusion that section 6.01(a) therefore negates an element of section 8.05. *See* W. LAFAVE & A. SCOTT, SUBSTANTIVE CRIMINAL LAW § 5.3, at 614–15 (duress does not negative mental state or volitional act, but instead justifies the intended criminal act); *United States v. Dominguez–Mestas,* 687 F.Supp. 1429, 1432–33 (S.D.Cal.1988) (duress does not preclude finding of wilful or voluntary conduct, but provides justification therefore). When acting under duress, the coerced actor "possesses the capacity for free choice" and therefore "chooses to commit the criminal offense rather than to accept the threatened consequences." Dressler, Joshua, *Exegesis of the Law of Duress: Justifying the Excuse and Searching for its Proper Limits,* 62 S.CAL.L.REV. 1331, 1359 (1989). As explained by legal commentators LaFave and Scott:

The rationale of the defense is not that the defendant, faced with the unnerving threat of harm unless he does an act which violates the literal language of the criminal law, somehow loses his mental capacity to commit the crime in question.[ ] Nor is it that the defendant has not engaged in a voluntary act.[ ] Rather, it is that, even though he has done the act the crime requires and has the mental state which the crime requires, his conduct which violates the literal language of the criminal law is justified because he has thereby avoided a harm of greater magnitude.[ ]
W. LAFAVE & A. SCOTT, SUBSTANTIVE CRIMINAL LAW § 5.3, at 614–15. *But see* Powell, *Constitutionality of Affirmative Defenses,* 28 BAYLOR L.REV. 133–35 (fundamental that acts committed under com-

The judgment of the Court of Appeals is affirmed.

OVERSTREET, J., concurs in the result.

CLINTON, Judge, concurring.

But for its retrogressive treatment of "voluntarily engag[ing] in conduct" *vis a vis* "an accidental act," I would be satisfied to join the majority. See opinion, at 622, 623 and 624. As it is, I merely concur in the judgment.

Under former penal codes, circumstances which excused or extenuated an offense included any *"act done by accident "* except in cases "where there has been a degree of carelessness or negligence which the law regards as criminal." Article 39, P.C. 1925.[1]

Now, however, "[t]here is *no law and defense of accident* in the present penal code, and the bench and bar would be well advised *to avoid the term 'accident'* in connection with offenses defined by the present penal code." *Williams v. State,* 630 S.W.2d 640, at 644 (Tex.Cr.App.1982) (opinion on rehearing); see *George v. State,* 681 S.W.2d 43, at 45 (Tex.Cr.App.1984) (*Williams,* supra, "instructive on the matter of 'voluntariness' ").

Under § 6.01(a) person commits a prescribed offense "only if he *voluntarily* engages in conduct." Contrary to notion advanced by the majority, opinion at 622, the term "voluntarily" was not intended or designed to be the "converse" of "accidentally." The fact that the Legislature did not include verbatim the 1970 proposed code definition, *id.,* at 623, n. 6, hardly means *ipso facto* that legislators disapproved of "this elementary rule requiring a *voluntary* act or omission as

predicate for criminal responsibility." Practice Commentary following § 6.01. We must not resort solely to dictionary definitions of "voluntarily," but consider the meaning contemplated by legislators of the full context in which the word is used. Manifestly they understood and appreciated that for purposes of conditioning criminal liability one first "voluntarily engages in conduct" *et cetera* as the latter and related terms are defined elsewhere. See, e.g., *George v. State,* supra.[2]

"Voluntarily" modifies the verb "engages" and thus prescribes the requisite conscious manner of making a bodily movement with an accompanying mental state. See *Dockery v. State,* 542 S.W.2d 644, at 649–650 (Tex.Cr. App.1976) (opinion on rehearing) (actions sufficiently voluntary to establish offense where culpable mental state also shown). Its true "converse" would seem to be "involuntarily," i.e., an unconscious bodily movement through convulsion, reflex or other sensual phenomenon.

"Accidentally," on the other hand, connotes the manner of an event arising from extrinsic causes, a happening by chance, usually with unfortunate consequences. It encompasses all sorts of unexpected occurrences that may not involve a bodily movement at all.

To *hold* as the majority does, "that the term 'voluntarily' as utilized in section 6.01(a) means *the absence of an accidental act,"* slip opinion, at 6, is to announce a vacuous definition rife with ambiguity, such that reasonable judges and jurors must guess at its intendment. We were correct to advise the bench and bar to avoid the term "accident" when

pulsion are not voluntary). While we recognize some disagreement on the issue of whether proof of duress negates the existence of voluntary conduct in the sense of free will, we think the better reasoned view maintains that it does not, as expressed by LaFave and Scott above.

1. Compare *Dickenson v. State,* 24 Tex.App. 45, 5 S.W. 648 (1887) (where horse accused riding became unmanageable beyond his control, ran against and upset buggy causing injuries to occupants, the latter was *act done by accident* without requisite degree of *carelessness or negligence* to render criminal), with *Flowers v. State,* 150 Tex. Cr.R. 467, 202 S.W.2d 462, at 463–464, 466 (1947) (where while driving under influence of

intoxicating liquor accused drove into pedestrians on shoulder of highway, resultant death *not* excusable).

All emphasis here and throughout this opinion is mine unless otherwise indicated.

2. Addressing § 6.01(a) in light of § 1.07(a)(1) and (8), the Court "construe[d] the provisions to mean that one voluntarily engages in conduct when the conduct *includes, inter alia,* a voluntary act and its accompanying mental state, if any. That such conduct also includes an involuntary act does not necessarily render that conduct involuntary. [note omitted]." *George,* supra, at 45 (emphasis in original).

meaning the "converse" of "voluntarily engag[ing] in conduct."

Accordingly, I concur only in the judgment.