COURT 
OF APPEALS
                                       
SECOND DISTRICT OF TEXAS
                                                   
FORT WORTH
 
 
                                        
NO. 2-05-060-CR
 
 
MILTON 
SAVAGE, JR.                                                          
APPELLANT
 
                                                   
V.
 
THE STATE 
OF TEXAS                                                                
STATE
 
                                              
------------
 
            
FROM THE 367TH DISTRICT COURT OF DENTON 
COUNTY
 
                                              
------------
 
                                
MEMORANDUM OPINION[1]
 
                                              
------------
 
 I.  
Introduction
 

Appellant 
Milton Savage, Jr. appeals his conviction for aggravated assault.  A jury found Savage guilty and assessed 
his punishment at twenty-five years= 
confinement and a $5,000 fine.  The 
trial court sentenced him accordingly.  
In two points, Savage contends that the trial court erred (1) by 
admitting extraneous bad acts evidence and (2) by overruling his objection to 
allegedly improper argument by the State.  
We will affirm.
II.  Factual and Procedural 
Background

Savage 
and his girlfriend, Gabina Gosse, lived together in Gosse=s 
apartment.  On September 12, 2004, 
an upstairs neighbor called 911 because she heard a woman screaming in the 
apartment below.  Officer Kristi 
Nathan responded to the call, and when she knocked on Gosse=s 
door, Savage answered it.  He was 
sweating and wearing a white t-shirt that had a few small blood smears on 
it.  Savage told Officer Nathan that 
he and Gosse had been arguing because he was moving out but that nothing 
physical had happened. While Officer Nathan and Savage were talking, Gosse 
approached them from outside of the apartment.  She was crying, her hair was messed up, 
and she had blood on her lip and chin.  
She told Officer Nathan that Savage had been threatening her and holding 
a knife to her throat for the last twenty minutes.         
Officer Andrea Fisher soon arrived to assist.  Gosse walked Officer Fisher through the 
apartment and explained what had just taken place.  Gosse said that she and Savage had been 
arguing, that she had told Savage that their relationship was over, and that she 
had put some of his things outside and locked the door.  Gosse said that she was sleeping on her 
couch when she heard Savage kick in her back door.  Savage entered her apartment and punched 
her in the face.  Gosse said that 
she tried to call 911, but Savage grabbed her cell phone from her and threw it 
across the room, breaking it into two pieces.  Gosse said Savage forced her into the 
bedroom and pinned her down on the bed.  
Savage pulled two knives out from under the mattress and threatened her 
with them.  Gosse said that she 
escaped through the back door when Savage got up to answer Officer 
Nathan=s 
knock at the front door.  

Gosse 
wrote a narrative victim statement setting forth the same facts that she had 
told the officers.  She also filled 
out a domestic violence victim statement, and in answer to the question, 
AHas 
this person assaulted you before? When? Where? How?,@ she 
responded, AYes, 
[three] nights ago, the police were here.@  
The 
next morning, however, Gosse went to the police department and recanted her 
story.  She said that she had lied 
to Officers Nathan and Fisher because she was angry at Savage for moving out and 
because she wanted to get him in trouble.  
She said that she had been drinking all day and had taken Valium.  She said Savage broke into her apartment 
because he was worried that she had overdosed.  She said that she threw her phone across 
the room because Savage wanted to call her sister-in-law to stay with her that 
night and that she screamed because she wanted Savage to stay with her.  The same day that Gosse recanted her 
story, she also filed a complaint against Officer Fisher.  She stated in her complaint that Officer 
Fisher had asked Gosse Awhy 
she was dating black guys.@  

At 
trial, Gosse testified that she lied to Officers Nathan and Fisher and that her 
second story was true.  She 
contended that Officer Fisher told her what her statement needed to say in order 
to hold Savage.  She also said that 
she told Officers Fisher and Nathan that she was intoxicated and that she had 
been taking drugs but that Officer Fisher told Gosse that she did not need to 
write that in her statement.  Gosse 
testified that she was not afraid of Savage and that he had never assaulted or 
threatened her.    

Prior 
to trial, Savage filed a motion in limine, asking the trial court to instruct 
the State not to mention any extraneous offenses without permission from the 
trial court.  After Gosse testified 
for the defense, the State informed the trial court that after the defense 
rested, it wished to call Barbara Giaimo to testify concerning 
Savage=s 
prior bad acts.  In accordance with 
Savage=s 
motion in limine, the court held a hearing outside the jury=s 
presence and overruled Savage=s 
objection to Giaimo=s 
testimony. 

The 
State then called Gosse=s 
upstairs neighbor, who testified that on September 9th, three nights before 
Savage allegedly assaulted Gosse, she heard a woman screaming and heard the 
sounds of a struggle coming from Gosse=s 
apartment.  The State then called 
Giaimo, who testified in the jury=s 
presence that she lived near Savage and Gosse and that on September 9th, she 
heard a woman screaming, AHelp 
me, please, God help me, get out of here.@  Giaimo testified that she called 911 
because she could see Savage inside the apartment with his arm around 
Gosse=s 
throat and stomach, pushing Gosse back towards the bedroom.  
After 
Giaimo testified, Gosse again took the stand.  She testified that Savage did not 
assault her on September 9th.  She 
explained that she lied in her victim statement when she wrote that Savage had 
previously assaulted her.
III.  Extraneous Offense 
Testimony
In his 
first point, Savage contends that the trial court erred by allowing testimony of 
an extraneous offense.  Savage does 
not argue that Giaimo=s 
testimony is not relevant, but instead apparently contends that under Rule 403, 
the prejudicial nature of the testimony substantially outweighs any probative 
value it may have because the acts to which Giaimo testified are not criminal 
offenses.  See Tex. R. Evid. 403.  The State responds that 
Giaimo=s 
testimony was properly admitted to rebut Gosse=s 
testimony that Savage had never assaulted her and also to rebut 
Savage=s 
defensive theory that Officer Fisher pursued Savage=s 
conviction to retaliate against Gosse for filing a complaint against the 
officer. 

Generally, 
evidence of other wrongful acts is not admissible to prove the character of the 
person to establish that he acted accordingly regarding the alleged 
offense.  Montgomery v. State, 
810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh=g). An 
extraneous offense may be admissible, however, if it has relevance apart from 
its tendency to prove the character of a person in order to show that he acted 
in conformity therewith.  Id. 
at 387.  Evidence that logically 
serves such purposes as Aproof 
of motive, opportunity, intent, preparation, plan, knowledge, identity, or 
absence of mistake or accident@ is 
relevant beyond its tendency to prove conforming character.  Id.; See Tex. R. Evid. 404(b).  Extraneous offenses are also admissible 
to rebut a defensive theory or when a false picture is presented by the 
defense.  See, e.g., Crank 
v. State, 761 S.W.2d 328, 341 (Tex. Crim. App. 1988) (AProbably 
the most common situation which gives rise to the admission of extraneous 
offenses is in rebuttal of a defensive theory.@), 
cert. denied, 493 U.S. 874 (1989), overruled on other grounds by 
Alford v. State, 866 S.W.2d 619, 624 n.8 (Tex. Crim. App. 1993); Albrecht 
v. State, 486 S.W.2d 97, 100-01 (Tex. Crim. App. 1972) (AEvidence 
of extraneous offenses committed by the accused has been held admissible . . . 
to refute a defensive theory raised by the accused.@); 
Yohey v. State, 801 S.W.2d 232, 236 (Tex. App.CSan 
Antonio 1990, pet. ref'd) (AAs a 
general rule the State is entitled to present, on rebuttal, any evidence that 
tends to refute the defensive theory. . . . The possibility that such rebuttal 
evidence may encompass extraneous offenses or acts on the part of the defendant 
does not preclude its admission into evidence.@).

Here, 
it is clear that the trial court admitted the extraneous offense evidence 
concerning the September 9th incident to rebut Savage=s 
defensive theories that Gosse lied in her statement to the officers, that Gosse 
was not afraid of Savage and also lied when she indicated that he had previously 
assaulted her on September 9th, and that Officer Fisher orchestrated 
Savage=s 
prosecution to retaliate against Gosse because Gosse filed a complaint against 
Fisher.
We 
next apply the Rule 403 balancing factors set out in Montgomery to 
determine whether the trial court abused its discretion by determining that the 
probative value of the September 9th extraneous offense evidence was not greatly 
outweighed by its prejudicial effect.  
First we examine how compellingly Giaimo=s 
testimony shows that Gosse was afraid of Savage and that Savage had in fact 
assaulted Gosse on September 9th.  
Savage=s 
defense attorney contended at trial that Gosse made up her initial story to the 
police, and Gosse herself testified that she was not afraid of Savage and had 
never been attacked by him.  The 
State answered this contention with Giaimo=s 
testimony that three days before the incident at issue, she heard a woman 
screaming and saw Savage pushing Gosse.  
Giaimo=s 
testimony makes it at least somewhat more likely that Gosse lied when she said 
she was not afraid of Savage and when she said Savage had never assaulted her. 


Moreover, 
it is doubtful that Giaimo=s 
testimony impressed the jury in some irrational way; the prior act that Giaimo 
testified to was no worse than the charged offense.  Additionally, the jury had already heard 
testimony from Gosse=s 
upstairs neighbor that on September 9th, she also heard a woman repeatedly 
screaming Ahelp 
me@ from 
Gosse=s 
apartment and that she heard a struggle Alike 
[Gosse] was being hit and pushed against the wall.@  The State did not spend an excessive 
amount of time developing the extraneous evidence during the guilt-innocence 
phase; the testimony in front of the jury amounts to 14 pages from a 274-page 
record.  Cf. Booker v. State, 
103 S.W.3d 521, 536 (Tex. App.CFort 
Worth 2003, pet. ref=d) 
(op. on reh=g) 
(noting third Montgomery factor weighed in favor of excluding extraneous 
offense when trial time spent proving extraneous offense exceeded time spent 
proving charged offense).  
Furthermore, the State needed Giaimo=s 
testimony because Gosse testified that the charged offense never took 
place.  The evidence of an 
extraneous act showing Savage=s 
behavior towards Gosse just three days before the alleged aggravated assault at 
issue was necessary to rebut Gosse=s 
claim that she lied in her statement to the police and to rebut the 
defense=s 
Aframe 
up@ 
theory that Officer Fisher pursued Savage=s 
conviction to retaliate against Gosse for filing a complaint against her.  See Waddell v. State, 873 S.W.2d 
130, 136 (Tex. App.CBeaumont 
1994, pet. ref'd) (holding that extraneous bad acts were logical and necessary 
rebuttal of major defense theory of fabrication). 


Our 
review of the record and the relevant criteria under Rule 403 demonstrates that 
the probative value of Giaimo=s 
testimony was not substantially outweighed by its prejudicial impact.  Consequently, we hold that the trial 
court did not abuse its discretion by admitting Giaimo=s 
testimony regarding Savage=s 
extraneous offense.  See 
Montgomery, 810 S.W.2d at 392‑93.  
We overrule Savage=s 
first point.  
IV.  Alleged Improper 
Argument
At 
trial, the State presented testimony from Officers Nathan and Fisher that it was 
common for victims of family violence to recant their initial statements to 
police.  In closing argument, the 
State=s 
attorney discussed how the jury should decide a conflict in testimony: 

[Prosecutor 1]: Now, in 
voir dire [Prosecutor 2] talked to you about how do you decide a case when 
[there are] conflicts in testimony.  
How do you do that?  
You=ve got Party A coming and 
saying one thing, Party B coming and saying another thing.  You=re the jury.  You decide how do you do that.  And then he went a step further and 
asked you, how do you do it in a case where the two stories, A and B, are coming 
from the same person?  
You=ve got a victim of a 
crime who at first says they are a victim of a crime and then says 
they=re not.  And everybody in here said two things: 
Number one, generally speaking, . . . all of you agreed, one of you even 
specifically said, whatever came out first - -
 
[Defense attorney]:  I=m going to object, Your 
Honor.  That=s asking them to consider 
facts that are not in evidence.
 
The Court:  Sustained.
 
[Defense attorney]:  I=d ask the jury be 
instructed to disregard.

The Court:  The very last portion of the argument, I 
will instruct the jury to disregard.
 
[Defense attorney]:  I=d ask for a 
mistrial.
 
The Court:  Denied.
 
[Prosecutor 1]:  Whatever comes out first tends to be more 
reliable. The next - -
 
[Defense attorney]:  Objection, Your Honor.  That assumes facts not in 
evidence.
 
The 
Court:  Overruled.  [Emphasis added.]
In his 
second point, Savage contends that the trial court erred by overruling his 
objection to the above-italicized final argument by the State during the 
guilt-innocence phase.  
Specifically, Savage complains that the prosecutor=s 
statement that A[w]hatever 
comes out first tends to be more reliable@ was 
an Ainvitation 
to consider evidence outside the record . . . [in] an attempt by the State to 
bolster their entire case with evidence that was not before the 
jury.@  The State argues that the comment was a 
summation of the testimony of two police officers, that it was a reasonable 
deduction from that testimony, or alternatively, that it was common knowledge. 


To be 
permissible, the State=s jury argument 
must fall within one of the following four general areas:  (1) summation of the evidence; (2) 
reasonable deduction from the evidence; (3) answer to argument of opposing 
counsel; or (4) plea for law enforcement.  Felder v. State, 848 S.W.2d 85, 94-95 
(Tex. Crim. App. 1992), cert. denied, 510 U.S. 829 (1993); Alejandro 
v. State, 493 S.W.2d 230, 231 (Tex. Crim. App. 1973).
One 
permissible area of jury argument is the making of reasonable deductions from 
the evidence.  Gaddis v. 
State, 753 S.W.2d 396, 398 (Tex. Crim. App. 1988).  Counsel is allowed wide latitude in 
drawing inferences from the evidence, so long as the inferences drawn are 
reasonable, fair, legitimate, and offered in good faith.  Id.  The purpose of closing argument is to 
assimilate the evidence to assist the fact finder in drawing proper conclusions 
from the evidence.  Id. at 
400.  The jury is then free to 
accept or reject such conclusions and inferences. Id. 


Here, 
the State read to the jury portions of Gosse=s 
written statements in which she said that Savage assaulted her, and the jury 
heard Gosse=s 
testimony that she lied in those statements.  The jury heard Officers Nathan and 
Fisher testify that it is very common for victims of domestic violence to recant 
their initial statements to police officers.  A reasonable deduction from the 
officers= 
statements is that the first statement of a domestic violence victim is more 
reliable than the second statement, i.e., that a domestic violence victim 
typically tells the truth in her first statement but commonly later recants that 
statement.  See generally Hudson 
v. State, No. 01-00-00431-CR, 2001 WL 1587337, at *3 (Tex. App.CHouston 
[1st Dist.] Dec. 13, 2001, pet. ref=d) 
(not designated for publication) (restating social worker=s 
testimony that reasons for domestic violence victim to recant her accusations 
include abuser=s 
financial support, abuser=s 
promising to get help, and abuser=s 
threatening victim into recanting).  
Thus, we hold that the complained of arguments constituted a reasonable 
deduction from the evidence and were proper.  See Felder, 848 S.W.2d at 
94-95.  We hold that the trial court 
did not err by overruling Savage=s 
objection to the prosecutor=s jury 
argument.  We overrule 
Savage=s 
second point.
V.  Conclusion
Having 
overruled both of Savage=s 
points, we affirm the trial court=s 
judgment.
PER 
CURIAM
 
PANEL F:    WALKER, J.; CAYCE, C.J.; and 
LIVINGSTON, J.
 
DO NOT 
PUBLISH
Tex. 
R. App. P. 
47.2(b)
 
DELIVERED: December 8, 
2005




[1]See Tex. R. App. P. 
47.4.