**Affirmed; Opinion Filed January 15, 2020**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-18-01262-CR

**ANTHONY PAZ TORRES, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 203rd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F15-76860-P**

# MEMORANDUM OPINION

Before Justices Molberg, Reichek, and Evans
Opinion by Justice Evans

Appellant Anthony Paz Torres appeals from the judgment adjudicating him guilty of murder. In three issues, appellant asserts: (1) the evidence was insufficient to disprove that appellant acted in self-defense; (2) the evidence was insufficient to establish that appellant acted with the requisite mental state for murder; and (3) the trial court erred in speculating that the mental health provider would inform parole officials that appellant was compliant in taking antipsychotic medication. We affirm the trial court's judgment.

## BACKGROUND

### A.     December 17, 2015

Mahar Yousaf, an employee at Omar's Wheels and Tires, was working on December 17, 2015 when appellant came into the shop wearing a yarmulke. Appellant stated that he needed air and the employees told him to help himself. Appellant began cursing and saying things like "what

are you doing here, you Muslims." Someone at the tire shop called the police. Evan Amine, an employee at the shop, told appellant to leave and "C-Bo," another employee, exchanged words with and kicked appellant as he was backing up. Appellant continued to curse and back up. Yousaf did not see anyone with a weapon. C-Bo and appellant almost got into a fight and Amine took a photo of appellant's license plate.

Sabrina Vanegas, a Dallas police officer, was dispatched to the tire shop on December 17, 2015 because a man had caused a disturbance. Officer Vanegas spoke with a witness at the tire shop, identified appellant's address from his license plate, and drove to appellant's house. When asked if he said anything about Muslims, appellant replied:

> I just told them that I'm Jewish, I'm Christian. They started talking shit to me, man. I told them I'm Jewish, I'm Christian; Christians and Jews we're united. And I simply told them that Muslims are here in this country prospering off of Christians but Christians and Jews can't live in their country.

Appellant said he did not provoke the employees but they got mad at him because he was Jewish. Appellant said the employees attacked him and kicked him in the head. The officers advised appellant not to go back to the tire shop and appellant said he would not.

### B. December 24, 2015

Bryan Vazquez, an employee, was at the tire shop on December 24, 2015 and interacted with appellant. Appellant asked Vazquez if the air was free and Vazquez said it was. Vazquez then went to put air in his tire but appellant ignored him and walked into the main building. Vazquez saw appellant pacing back and forth before he pulled his gun and started shooting. Vasquez was shot on the side of his back. He testified that Amine did not pull a gun on appellant. He also noted that the shop has many cameras but not all of them were working due to remodeling at the shop. Benigo Cuevas was also at Omar's shop on December 24, 2015 and identified appellant as the shooter. Cuevas testified that he heard Amine tell appellant to leave and appellant

"started shooting crazy." Cuevas did not see Amine with a gun or see anyone else shooting towards appellant.

Rene Rangel, Enrique Garcia Mendoza, and Luis Alberto Morales Lopez went to Omar's Wheels and Tires to get tires on December 24, 2015. Rangel parked next to the shop's office. Mendoza sat in the passenger front seat of the car and Lopez sat in the back. They were waiting outside when a man began shooting toward the shop's employees. Appellant shot through Rangel's rear windshield hitting Mendoza in the back of the neck. Rangel identified appellant as the shooter. Rangel testified that Omar shot back at appellant after appellant tried to take off from the tire shop. In addition, Yousaf was shot several times and sustained serious injuries.

Amine recognized appellant from his prior visit and told Omar to be careful. Omar went up to appellant and offered to help him. Appellant asked about getting air and told Omar he was looking for the "bald headed guy." Omar testified that it clicked in his head that this was the guy from the prior week and he understood that appellant was asking about C-Bo. Omar did not have his gun on him because he had left it in his truck. Omar testified that he was the only one who carried a gun at the shop and that there were no other weapons there. Appellant wandered into the back of the shop where the employees worked and Omar and Amine escorted him out. After Omar asked appellant to leave, Omar saw him touch the gun at his waistband. Omar called 911, picked up a sledgehammer because he was "scared for his life," and walked away from appellant. Omar walked toward his truck to get his gun. Appellant was in the parking lot walking back and forth when he started shooting toward the shop. When appellant began shooting, Omar testified that no one had acted aggressively toward him or aimed a gun at him. In addition, Omar stated that no one threatened to shoot, stab or hit appellant prior to the shooting nor did Omar threaten appellant with the sledgehammer. Omar started shooting back at appellant when appellant jumped into his car. Omar testified that appellant tried to reload his gun but once Omar began shooting, appellant

drove off and almost hit him with his car. Omar fired at appellant but did not fire toward Rangel's car. Although the shop has many security cameras, the surveillance system did not record the shooting of the victim. Omar does not know how the security footage lost minutes of a recording but he did not delete the footage nor did anyone touch the surveillance system until the detectives came to the shop and asked about it.

Alex Brinkley, an officer with the police department at Baylor Hospital, was working in the emergency room waiting room on December 24, 2015. Someone informed Brinkley that a man outside had been shot. Brinkley went outside and saw a Chevrolet sedan with bullet holes on the front driver's side, but appellant had already gone inside. He recalled seeing a Glock handgun magazine laying in the car. Brinkley also saw a leather handgun holster on appellant's body. Detective Abe Santiago, a retired crime scene investigator with the Dallas police department, was dispatched to Baylor Hospital on December 24, 2015. Santiago photographed appellant as well as appellant's car, a 2011 Chevrolet, and the Glock on the passenger seat floorboard.

### C.    Trial

At trial, Dr. Candace Shoppe, a forensic pathologist at the Dallas County Medical Examiner's Office, testified that she performed Mendoza's autopsy and concluded that he died from a gunshot wound. Dr. Shoppe recovered the bullet core from Mendoza's neck. April Kendrick, the firearm supervisor at the Southwest Institute of Forensic Sciences, testified at trial that she analyzed evidence for this case including two firearms, magazines, fired cartridge cases and fired bullets. Kendrick reviewed the fired cartridge casings and concluded that many of the casings were fired by appellant's Glock semiautomatic pistol. Kendrick also reviewed other casings fired by another Glock pistol. Kendrick did not match the bullets to the guns.

Derick Chaney, a detective with the Dallas police department, was assigned to the murder investigation at the tire shop. Detective Leonard retrieved the surveillance video from the shop

–4–

and Detective Chaney did not see Detective Leonard delete any footage. Detective Chaney testified that he was aware that some of the videos skipped and were missing time but that the missing time did not change his conclusions in the case.

Following the trial, the jury found appellant guilty of murder as charged in the indictment. The trial court sentenced appellant to thirty-five years' confinement in the Texas Department of Criminal Justice.

**ANALYSIS**

### D. Sufficiency of Self-Defense and Requisite Mental State

In his first two issues, appellant challenges the sufficiency of the evidence to (1) disprove that he acted in self-defense and (2) establish that he acted with the requisite mental state for murder.

#### 1. Standard of review

When reviewing whether there is legally sufficient evidence to support a criminal conviction, the standard of review we apply is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). This standard tasks the factfinder with resolving conflicts in the testimony, weighing the evidence, and drawing reasonable inferences from basic facts. *Id.* On appeal, reviewing courts determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict. *Id.*

In evaluating a claim of insufficient evidence in the context of a self-defense issue, we apply the general sufficiency review principles along with sufficiency principles specific to self-defense. *Gilbert v. State*, 575 S.W.3d 848, 862 (Tex. App.—Texarkana 2019, pet. ref'd). When

there is a claim of self-defense or defense, the defendant bears the burden to produce evidence supporting the defense while the State bears the burden of persuasion to disprove the raised issues. *Id.* The defendant must produce some evidence that would support a rational finding in his favor on the defensive issue. *Id.* As with the general sufficiency principles, the trier of fact is the sole judge of the credibility of defensive evidence, and is free to accept it or reject it. *Id.*

### 2. Murder

A person commits murder if he: (1) intentionally or knowingly causes the death of an individual; or (2) intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual. TEX. PENAL CODE § 19.02(b)(1) and (2).

### 3. Self-defense

Appellant argues that he acted reasonably in determining that it was necessary to defend himself based on the events at the tire shop on December 17 and 24, 2015, and the evidence was insufficient to disprove that he acted in self-defense. Pursuant to the penal code, a person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force. *See* TEX. PENAL CODE § 9.31(a). A person is justified in using deadly force against another if the actor would be justified in using force against the other under Section 9.31 and when and to the degree the actor reasonably believes the deadly force is immediately necessary. *See* TEX. PENAL CODE § 9.32(a).[1]

---

[1] Section 9.31 of the Texas Penal Code provides as follows:

The actor's belief that the force was immediately necessary as described by this subsection is presumed to be reasonable if the actor:

(1) knew or had reason to believe that the person against whom the force was used:

The evidence demonstrates that appellant provoked the altercation on December 17, 2015. Appellant entered the tire shop and began cursing and saying things like "what are you doing here, you Muslims." After appellant was told to leave and failed to do so, C-Bo exchanged words with appellant and kicked him. The police advised appellant to stay away from the shop but appellant returned on December 24, 2015. Appellant asked for C-Bo and wandered into the employee work area. Omar asked appellant to leave but appellant continued to pace in the parking lot before pulling out a gun and firing toward the shop employees hitting Mendoza, Vasquez, and Mahar. Several witnesses testified that no one acted aggressively toward appellant or aimed a gun at him prior to the shooting by appellant. Witnesses also testified that Omar only shot at appellant after he had begun shooting toward the employees. Thus, the evidence does not suggest that anyone threatened appellant with the use of deadly force at the time appellant began shooting.

In addition, there is no evidence that Mendoza was appellant's intended target. Mendoza was an unarmed customer with his back toward appellant seated in his friend's car next to the tire shop's office. Appellant does not argue Mendoza presented any threat of force against appellant, nor would the record support such an argument because all the evidence is that Mendoza sat in the car with his back toward appellant. Under the principle known as transferred intent, appellant is criminally responsible for causing Mendoza's death because the only difference between what

---

(A) unlawfully and with force entered, or was attempting to enter unlawfully and with force, the actor's occupied habitation, vehicle, or place of business or employment;

(B) unlawfully and with force removed, or was attempting to remove unlawfully and with force, the actor from the actor's habitation, vehicle, or place of business or employment; or

(C) was committing or attempting to commit aggravated kidnapping, murder, sexual assault, aggravated sexual assault, robbery, or aggravated robbery;

(2) did not provoke the person against whom the force was used; and

(3) was not otherwise engaged in criminal activity, other than a Class C misdemeanor that is a violation of a law or ordinance regulating traffic at the time the force was used.

actually occurred and what he desired, contemplated, or risked, is that a different person was injured, harmed, or otherwise affected. *See* TEX. PENAL CODE § 6.04(b)(2); *Manrique v. State*, 994 S.W.2d 640, 647 (Tex. Crim. App. 1999). Texas law also provides that even if appellant was justified in using deadly force against one of the tire shop employees, justification is unavailable in a prosecution for the reckless injury or killing of an innocent third person. *See* TEX. PENAL CODE § 9.05 ("Even though an actor is justified under this chapter in threatening or using force or deadly force against another, if in doing so he also recklessly injures or kills an innocent third person, the justification afforded by this chapter is unavailable in a prosecution for the reckless injury or killing of the innocent third person."). Thus, even if the evidence were to demonstrate that appellant was justified in using deadly force against one of the tire shop employees, which it does not, appellant would not be entitled to the use of self-defense as justification for killing Mendoza. *See Banks v. State*, 955 S.W.2d 116, 118 (Tex. App.—Fort Worth 1997, no pet.). For all these reasons, we overrule appellant's first issue.

### 3. Requisite mental state

Appellant argues that (1) the jury charge should have included an "accident" justification instruction because Mendoza was not appellant's intended target; and (2) appellant's mental condition prevented him from acting intentionally or recklessly. As for appellant's accident argument, the defense of accident no longer exists in the penal code. *See Williams v. State*, 630 S.W.2d 640, 644 (Tex. Crim. App. 1982) ("There is no law and defense of accident in the present penal code, and the bench and bar would be well advised to avoid the term 'accident' in connection with offenses defined by the present penal code."). Instead, the penal code provides that a "person commits an offense only if he voluntarily engages in conduct, including an act, an omission, or possession." *See* TEX. PENAL CODE § 6.02(a). "Voluntariness" within the meaning of section 6.01(a) refers only to one's physical bodily movements and means the absence of an accidental

act, omission or possession. *See Alford v. State*, 866 S.W.2d 619, 624 (Tex. Crim. App. 1993). In this case, the evidence demonstrates that appellant voluntarily pulled out a weapon and began firing toward the tire shop employees. In his second argument, appellant argues that his mental condition prevented him from acting intentionally or recklessly. Appellant, however, rested after the conclusion of the State's case and did not call any witnesses or experts in support of his defense. Appellant failed to provide the jury with any evidence that he suffered from schizophrenia because this evidence was introduced only during the punishment phase of the trial. Accordingly, the jury could not have considered whether appellant's diagnosis had any impact on his mental state when reaching its verdict. For all the reasons discussed above, we overrule appellant's second issue.

### 4. Sentencing Hearing

In his third issue, appellant argues that the "trial court erred in speculating that the mental health provider in the Institutional Division would inform parole officials that Appellant was compliant in taking antipsychotic medication." Appellant asserts that his due process and statutory rights were violated because "the trial court used incorrect information that Appellant would parole eight to 11 years before completing his 35-year sentence on the successful management of his schizophrenia." Generally, to preserve an issue for appellate review, a party must present to the trial court a timely request, objection, or motion stating the specific grounds for the ruling desired. *See* TEX. R. APP. P. 33.1(a). Appellant failed to raise this objection during the sentencing hearing. Accordingly, appellant has failed to preserve this argument for appellate review.

**CONCLUSION**

We resolve appellant's issues against him and affirm the trial court's judgment.


/David Evans/
DAVID EVANS
JUSTICE


Do Not Publish
Tex. R. App. P. 47
181262F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ANTHONY PAZ TORRES, Appellant

No. 05-18-01262-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the 203rd Judicial District Court, Dallas County, Texas
Trial Court Cause No. F15-76860-P.
Opinion delivered by Justice Evans.
Justices Molberg and Reichek participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 15th day of January, 2020.