Opinion issued July 6, 2007















 

 

 

Opinion issued July 6, 2007

 

 

 

 

 








 

 








 

     

 

 

 

 

 

In The

Court of Appeals

For The

First District of Texas

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



NO. 01-06-00647-CR

       
01-06-00648-CR

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



RONNIE LEE PRICE, Appellant

 

V.

 

THE STATE OF TEXAS,
Appellee

 

 



On Appeal from the 209th District Court

Harris County, Texas

Trial Court Cause Nos. 1024367 & 1052195








 

O P I N I O N

 

          Ronnie
Lee Price (“Price”) appeals his conviction for capital murder under
section 19.03(a)(2) of the Texas Penal Code, for which the State did not seek
the death penalty.  Price, who
received an automatic life sentence, claims that the indictment was inadequate
to charge him with capital murder and protests the admission of evidence of a
protective order that his estranged wife had obtained to keep him away from her
home.  Finding no error, we affirm.

Background

Price and Sharon Wilkins Price
(“Sharon”)
separated in about November 2004 after approximately eleven years of marriage.  Sharon
remained in the home, which she held in her name.  In January 2005, she secured a
protective order against Price.  The
protective order contains a finding that Price “has committed family
violence,” and prohibited Price from: 

a)    
Committing family
violence against SHARON PRICE, RONNELL PRICE and KEVIN WILKINS.

b)   
Communicating
directly with SHARON PRICE, RONNELL PRICE and KEVIN WILKINS in a threatening or
harassing manner.  

c)    
Communicating a
threat through any person to SHARON PRICE, RONNELL PRICE and KEVIN WILKINS. 

d)   
Going to or near
the residence or place of employment or business of SHARON PRICE, RONNELL PRICE
and KEVIN WILKINS, specifically . . . from coming with[in] 150 feet of [Sharon
Price’s] place of residence . . . or [] employment. 

e)    
Possessing a firearm
. . . . 

f)     
Engaging in
conduct directed specifically toward SHARON PRICE, RONNELL PRICE and KEVIN
WILKINS, including following SHARON PRICE, RONNELL PRICE and KEVIN WILKINS,
that is likely to harass, annoy, alarm, abuse, torment, or embarrass SHARON PRICE,
RONNELL PRICE and KEVIN WILKINS.  

g)     Going to or near the child care facility or school of RONNELL PRICE and KEVIN WILKINS . . . .

 

Sharon filed for divorce February
2005.  

Late in the evening of April 21,
2005, Sharon’s
electricity went out.  She called
her cousin, Clyde Ball, who lived about a block away, to find out whether the
electricity had gone out there. 
Ball answered the phone and told Sharon
he would head over to check her electricity.  As he walked toward the house, he saw
Price, who also lived nearby, walking in the neighborhood.  A short time later, he saw Price again,
but this time in his truck.  After
Ball had sat outside the door talking with Sharon for a short time, Price approached the
door.  He angrily asked Sharon why she had invited
Ball to the house at that time of night. 

Ball walked away to try to defuse the
situation.  After he started on his
way home, he heard a lot of banging, “like someone was kicking in
something.” 

When Ball arrived home, he told Mitzi
Ball, his cousin and Sharon’s sister,
about the situation at Sharon’s
house.  Mitzi changed out of her
nightclothes so that she could go to Sharon’s
home and find out what was happening. 


Meanwhile, Price and Sharon’s
nine-year-old son Ronell, who had been asleep in his room, was awakened by the
sound of a gunshot.  Ronell left his
room to investigate and found Price walking around and holding Sharon’s gun.  When Ronell asked where his mother was,
Price responded, “I think your mother is dead.”  Frightened, Ronell ran back to his room
and hid under his desk.  

When Mitzi arrived at Sharon’s home, she called for Sharon from the front entry, noting that a
bar had been broken out of the burglar bars over the front door.  Price opened the door and shot Mitzi
twice, once in the neck and once in the hand.  She fell in the yard, unable to
move.  A short time later, Price
returned, kneeled over Mitzi, held the gun to her head and pulled the trigger
twice, but the gun did not discharge. 


Price left the scene and called Leo
Wilson, with whom he had been living since late January or early February
2005.  Price told Wilson he was in trouble.  Price explained to Wilson
that he had gone to Sharon’s
home to talk to her, but they had gotten into it and he took the gun from her
and shot her and her sister.  

The
State charged Price under two indictments, one for the aggravated assault of
Mitzi and the other for the capital murder of Sharon. 
Before trial, Price excepted to the substance of the capital murder
indictment, which the trial court denied. 


Also before trial, on May 23, 2006,
the State filed an amended notice of intent to use prior convictions and
extraneous offenses in its case-in-chief. 
The State gave notice that it intended to introduce evidence that Price
had previously assaulted Sharon on October 17, 2004 and had been convicted of
misdemeanor assault on a family member on April 6, 2006—approximately two
weeks before Sharon Price’s death—“to show, among other
things, motive, opportunity, intent, preparation, plan, knowledge, identity, or
absence of mistake or accident.” 
The State filed a second amended notice of its intent to use prior
convictions and extraneous offenses on June 20, 2006.  This amended notice added two more
incidents involving Sharon, an October 2005
incident in which Price threatened to kill Sharon
and a September 2005 incident in which Price grabbed Sharon
and threw her against a wall, as well as Price’s actions toward Clyde and Mitzi Ball on April 22, 2005.  

Trial began on June 27, 2006.  During the questioning of Detective
Tonry of the Harris County Sheriff’s Office, who had investigated the
crime scene, Detective Tonry mentioned that he had discovered a protective
order was on file against Price. 
The defense timely objected to this statement as violating the motion in
limine and moved for a mistrial. 
The trial court denied the motion, but promptly gave the jury a lengthy
limiting instruction.  

          The
next morning, before the jury arrived, the trial court heard additional
argument from the parties concerning the admissibility of the protective
order.  The court decided to allow
admission of the protective order as an exhibit and informed the jury that it
could consider the order during its deliberations.  

The jury ultimately found Price
guilty on both charges.  On June 29,
2006, the court sentenced Price to a $10,000 fine and twenty years’
imprisonment for the aggravated assault conviction and a life term of
imprisonment for the capital murder conviction.  Price noticed this appeal on the same
date.  

Sufficiency of Indictment

 

Price contends that the trial court
erred in denying his exception to the substance of the capital murder
indictment because the State’s pleading did not track the language of the
capital murder statute.  Section
19.03(a) of the Texas Penal Code explains that a person commits capital murder 

if the person commits murder as defined under Section 19.02(b)(1) and . . . the person intentionally commits the murder in the course of committing or attempting to commit . . .  burglary . . . .”  

 

Tex. Pen.
Code Ann. §
19.03(a)(2) (Vernon
Supp. 2006).  The indictment at
issue reads as follows:  

[I]n Harris County, Texas, RONNIE LEE PRICE . . . on
or about APRIL 22, 2005, did then and there unlawfully, while in the course of committing
and attempting to commit the BURGLARY OF HABITATION owned by SHARON WILKINS,
intentionally cause the death of
SHARON WILKINS, with a deadly weapon, namely, A FIREARM.

 

Price contends that the indictment
failed to sufficiently charge the offense of capital murder because it does not
expressly state that Price intentionally committed murder.   

The sufficiency of an indictment is a
question of law.  State v. Moff,
154 S.W.3d 599, 601 (Tex.  Crim.  App.  2004).  Accordingly, we review the trial court’s
denial of the exception de novo.  Id.  

An exception to the substance of the
indictment should be granted only when the indictment: (1) fails to charge that
the defendant committed a violation of law; (2) shows on its face that the
charged offense is not subject to prosecution because it is barred by a lapse
of time, or was committed after the finding stated in the indictment; (3)
contains some matter that constitutes a legal defense or bar to the
prosecution; or (4) shows on its face that the court lacks jurisdiction to try
defendant for the crime charged.  Tex. Code Crim. Proc. Ann. art 27.08
(Vernon 2006).   Price’s
issue on appeal falls into the first category.  

Ordinarily, an indictment is legally sufficient if it tracks the penal statute in question.  Moff, 154 S.W.3d at 602; Santana v. State, 658 S.W.2d 612, 613 (Tex. Crim. App. 1983).  Section 19.02(b)(1) of the Penal Code defines murder for the purposes of Chapter 19, explaining that a person commits murder if that person “intentionally or knowingly causes the death of an individual.”  Tex. Pen. Code Ann. § 19.02(b)(1) (Vernon 2006).  Rather than simply tracking the capital murder statute, then, the indictment charging Price incorporated the more specific definition of “murder” from the Penal Code into the charging language.  See Tex. Pen. Code Ann. § 19.02(b)(i).
According to Price, it is inadequate for the indictment to say “intentionally cause the death,” when the capital murder statute says “intentionally commit murder,” and, as a result, it fails to charge him with capital murder.  We disagree.  The indictment correctly expressed the level of intent required for a charge of capital murder without the reiteration urged by Price.  See Tex. Code Crim. Proc. Ann. art. 21.17 (Vernon 1989) (“Words used in a statute to define an offense need not be strictly pursued in the indictment; it is sufficient to use other words conveying the same meaning, or which include the sense of the statutory words.”).  

In Crank v. State, the Court of Criminal Appeals held that virtually
identical language was sufficient to charge the
defendant with capital murder.[1]   761 S.W.2d 328, 349, 352 (Tex.
Crim. App. 1988), overruled on other
grounds by Alford v. State, 866
S.W.2d 619 (Tex. Crim. App. 1993);  cf. Larson
v. State, 759 S.W.2d 457, 462 (Tex.
App.—Houston
[14th Dist.]  1988, pet.
ref’d) (holding that indictment that tracked
language of indecency with child statute and incorporated statutory definition
of “sexual contact” properly alleged offense charged).  The indictment charging Price
simply incorporates the applicable definition of “murder” from the
Penal Code and thus properly charges him with capital murder.      

Evidence of
Extraneous Offenses

 

Price’s remaining issues on
appeal challenge the admission of evidence of the protective order, a copy of
which was found in his truck.  He
contends that (1) the trial court should have granted him a mistrial when
Officer Tonry mentioned the protective order, and (2) the trial court abused
its discretion in admitting the protective order into evidence. Because we find
the second issue dispositive, we address it first.  

Admissibility

In investigating the crime scene,
Harris County Deputy Smith found several items in the truck Price was driving
the night of April 22, including a copy of the January 2005 protective
order.  The protective order
contains a finding that Price “has committed family violence,” and
expressly prohibited Price from going to or near Sharon’s
house, communicating directly with Sharon,
possessing a firearm, or harassing Sharon.  

While the protective order does not
identify any specific act that justified the issuing court’s finding that
Price committed family violence, it permits the inference that Price engaged in
prior misconduct that is not alleged in either indictment, and thus requires
treatment as extraneous offense evidence. 
See Manning v. State,
114 S.W.3d 922, 926 (Tex.
Crim. App. 2003) (defining extraneous
offense as any act of
misconduct, whether resulting in prosecution or not, not shown in
indictment).  We review a trial
court’s ruling to admit extraneous
offense evidence for an abuse of
discretion. Rankin v. State, 974 S.W.2d 707, 718 (Tex. Crim. App. 1996)
(op. on reh’g); Wolfberg v. State, 73 S.W.3d 441, 443 (Tex.
App.—Houston
[1st Dist.] 2002, pet. ref’d). A trial court acts within its discretion
as long as its decision to admit evidence is within the “zone of
reasonable disagreement.”  Montgomery
v. State, 810 S.W.2d 372, 391–92 (Tex. Crim. App. 1990) (op. on
reh’g).

Evidence of
extraneous acts may be admissible in this murder proceeding under article
38.36(a) of the Texas Code of Criminal Procedure, which allows the admission of
all relevant evidence of the previous relationship between the accused and the murder victim.  Tex.
Code Crim. Proc. Ann. art. 38.36(a) (Vernon 2005);[2]
Garcia v. State, 201 S.W.3d 695, 704–05 (Tex. Crim. App. 2006) (trial
court did not abuse its discretion in admitting evidence of incident that
occurred approximately nine months before victim’s murder in which
defendant kicked victim out of car and continued home with their two children);
Rogers v. State, 183 S.W.3d 853,
861–63 (Tex. App.—Tyler 2005, no pet.) (protective order
illustrates nature of ongoing relationship between defendant and victim and
shows its deterioration in year before shooting, which was relevant for jury to
assess defendant’s mental state and actions).  The ultimate determination of whether
extraneous offense evidence is admissible, however, still depends on whether it
falls within the limitations set forth in the Texas Rules of Evidence.  Garcia,
201 S.W.3d at 702–05.

Texas Rule of Evidence 404(b)
prohibits admission of extraneous offenses to prove a person’s character
or to show that the person acted in conformity with that character. See Tex. R. Evid. 404(b).  Extraneous
offenses may, however, be admissible to show motive, opportunity, intent,
preparation, plan, knowledge, identity, or absence of mistake or accident.   Montgomery, 810 S.W.2d at 387–88.  Extraneous
evidence may also be admissible to rebut defensive theories raised by the
State’s witnesses during cross-examination. Ransom v. State, 920 S.W.2d 288, 301 (Tex. Crim.
App. 1994); see also Moses v.
State, 105 S.W.3d 622, 626 (Tex. Crim. App. 2003) (noting that rebuttal of defensive
theory is “one of the permissible purposes for which relevant evidence
may be admitted under Rule 404(b).”).


A dispute concerning the
defendant’s intent justifies the admission of extraneous offense evidence
if the required level of intent for the offense cannot be inferred from the act
itself or if the defendant presents evidence to rebut the inference that the
required intent existed.  Ludwig v. State, 969 S.W.2d 22, 30 (Tex.
App.—Fort Worth 1998, pet. ref’d) (after appellant repeatedly
stated that he entered apartment solely to get his daughter and that he could
never hurt victim, evidence that appellant had repeatedly threatened and
inflicted violence on victim was relevant both to rebut appellant’s
defensive theory and establish his intent); McGee v. State, 725 S.W.2d
362, 364 (Tex. App.—Houston [14th Dist.] 1987, no pet.).  In cross-examining the State’s
witnesses and closing argument, the defense tried to instill doubt about
whether Price: (1) kicked down the door; (2) had a legal right to enter the
house; (3) acted in self-defense; and (4) had the gun when Sharon was shot.  

When Price’s cross-examination
of the State’s witnesses brought Price’s intent into question as a
defensive theory, it cast doubt upon an inference of intent from other
uncontested direct evidence.  The
State then became entitled to prove intent through evidence of other crimes,
wrongs, or acts.   See
Johnson v. State, 932 S.W.2d 296,
302 (Tex. App—Austin 1996, pet. ref’d); see also Prieto v. State,
879 S.W.2d 295, 298 (Tex. App.—Houston [14th Dist.] 1994, pet.
ref’d) (past abusive treatment by defendant made criminal intent to
injure more likely); George v. State, 841 S.W.2d 544, 547–48 (Tex. App—Houston [1st Dist.] 1992) (previous violence between
victim and defendant constituted evidence of criminal intent), aff’d, 890 S.W.2d 73 (Tex. Crim. App.
1994).  The protective order, then,
was relevant and admissible on this ground.

The protective order is also
admissible as contextual evidence.
See Wyatt v. State, 23 S.W.3d 18, 25 (Tex. Crim. App. 2000); Swarb v.
State, 125 S.W.3d 672, 682
(Tex. App.—Houston [1st Dist.] 2003, pet. dism’d) (finding that
arrest warrant provided jury with context to show why officers were searching
for appellant and how they found controlled substance in his vehicle).
“The purpose of admitting extraneous
evidence as same transaction
contextual evidence is to place
the instant offense in context.” Nguyen v. State, 177 S.W.3d 659,
667 (Tex. App.—Houston
[1st Dist.] 2005, pet. ref’d). 
Because the detectives found the protective order in Price’s
truck, its introduction was relevant to help the jury understand how the
circumstances surrounding the charged crime fit together.  See Camacho v. State, 864 S.W.2d
524, 532 (Tex. Crim. App. 1993).  

Price asserts that the trial court
nevertheless should have excluded evidence of the protective order under Texas
Rule of Evidence 403.  See Tex.
R. Evid. 403.  Even if
evidence qualifies for admission under rule 404(b), it may still be excluded
under Rule 403 if the danger of unfair prejudice substantially outweighs its
probative value.  Rogers v. State, 991 S.W.2d 263, 266 (Tex. Crim. App. 1999).  In making this determination, a trial
court should consider (1) how probative the evidence of the extraneous offense is, (2) the potential for the
extraneous offense to impress the jury in some irrational but indelible way,
(3) the amount of time the proponent will need to develop the evidence, and (4) the
proponent’s need for the evidence
to prove a fact of consequence. Wyatt v. State, 23 S.W.3d 18, 26 (Tex.
Crim. App. 2000).  Only a
significant disparity between the degree of prejudice of the evidence and its
probative value will tip the balance toward requiring exclusion.  Jones v. State, 944 S.W.2d 642, 652 (Tex. Crim.
App. 1996).  

Sharon secured the protective order a few
months before her death.  Moreover,
a copy of the protective order was found in the truck Price was driving at the
time of the incident.  Both of these
facts speak to the strong probative value the protective order had in
demonstrating the nature of the parties’ relationship as well as
Price’s intent.  The jury
heard about the protective order only briefly, and did not receive any
information concerning the specific acts that may have supplied grounds for its
issuance, which would have made the evidence substantially more
inflammatory.  The protective order
supports the State’s theory that Price entered Sharon’s home with
the intent to commit a felony, theft, or assault, an essential element of the
charged offense of capital murder.  See Tex.
Pen. Code Ann. § 19.03(a)(2).  Given the high probative value of this
evidence, as well as the minimal emotional impact the protective order had,
particularly in comparison to what the underlying extraneous offenses might
have had, we conclude that the decision to admit the protective order falls
within the zone of reasonable disagreement.  Thus, we hold that the trial court did
not abuse its discretion in admitting it.

Notice

Price further
contends the protective order should have been excluded because the State
failed to give him reasonable notice of its intent to use the protective order
as evidence during its case-in-chief. 
A defendant who timely requests notice
of the State’s intent to introduce extraneous offenses during the case-in-chief is entitled to notice “in the same manner as
the state is required to give notice
under Rule 404(b).” Tex. Code
Crim. Proc. Ann. art. 38.37, § 3 (Vernon 2006); Hernandez v.
State, 176 S.W.3d 821, 824 (Tex.
Crim. App. 2005).  The purpose of
rule 404(b)’s notice
requirement is to prevent surprise and inform the defendant of the offenses the
State plans to introduce at trial.  Hernandez,
176 S.W.3d at 823–24; Hayden v. State, 66 S.W.3d 269, 272 (Tex. Crim. App.
2001).    

The record belies Price’s
contention.  Among other enumerated
incidents, the State notified Price of its intent to introduce evidence of
Price’s conviction for misdemeanor assault on a family member, ostensibly
based on one of the other incidents identified by the State in its May 23, 2006
or June 6, 2006 notices to Price. 
Price has not shown how this notice
failed to constitute reasonable notice
of the State’s intent to offer evidence that Price had committed family
violence.  The State gave Price
timely notice of bad acts and extraneous offenses that could serve as grounds
for issuance of the protective order. 
We therefore hold that the trial court did not abuse its discretion in
concluding that the State’s notice was adequate, in that it specifically
described incidents of family violence.

Motion for Mistrial

Finally, Price argues that the trial
court abused its discretion by failing to grant his request for a mistrial
following Officer Tonry’s testimony. 
Because the trial court did not err in admitting evidence of the
protective order, the trial court did not err in denying Price a mistrial for a
witness’s testimony that a protective order had been entered against
Price.  Moreover, Price’s own
defensive strategy opened the door for admission of the protective order and
thus cured any harm which might have flowed from Officer Tonry’s
statement.   See Daggett v. State, 187 S.W.3d 444,
451–52 (Tex. Crim. App. 2005); Blackwell
v. State, 193 S.W.3d 1, 10–13 (Tex.
App.—Houston
[1st Dist.] 2006, pet. ref’d).

Conclusion

            The trial court did not err in denying
Price’s exception to the substance of the capital murder indictment.  Also, because the trial court acted
within its discretion in admitting extraneous offense evidence in the form of the
protective order, it correctly denied Price’s motion for mistrial.  

We therefore affirm the judgment of
the trial court.

 

 

                                                                         Jane Bland

                                                                         Justice

 

Panel consists of Justices Nuchia,
Hanks and Bland.

Publish.  Tex.
R. App. P. 47.2(b).

 

 

 

 











[1] The relevant portions of
the indictment in Crank  read as follows:

. . . . Denton Alan Crank. . . .  did . . . while in the course of
committing and attempting to commit the robbery of SHIRLEY POTEET,
intentionally cause the death of TERRY ORINGDERFF . . . by shooting the
Complainant with a gun.

 

Crank v.
State, 761 S.W.2d 328, 349 (Tex.
Crim. App. 1988), overruled on other
grounds by Alford v. State, 866 S.W.2d 619 (Tex. Crim. App. 1993).





[2] Article 38.36(a) reads as
follows: 

 In all prosecutions
for murder, the state or the
defendant shall be permitted to offer testimony as to all relevant facts and
circumstances surrounding the killing and the previous relationship existing
between the accused and the deceased, together with all relevant facts and circumstances
going to show the condition of the mind of the accused at the time of the offense.

 

Tex. Code Crim. Proc. Ann. art 38.36(a) (Vernon 2005).